474 So.2d 825 (1985)
B.G. WASDEN, Appellant,
v.
SEABOARD COAST LINE RAILROAD CO., a Corporation, Appellee.
No. 83-1930.
District Court of Appeal of Florida, Second District.
June 12, 1985.
Rehearing Denied August 13, 1985.
*827 Joel D. Eaton of Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, P.A., and Beckham & McAliley, P.A., Miami, for appellant.
Ralph C. Dell and Peter J. Grilli of Allen, Dell, Frank & Trinkle, Tampa, for appellee.
CAMPBELL, Judge.
Appellant Wasden, plaintiff below, appeals an order granting defendant Seaboard Coast Line Railroad Company's post-trial motion for mistrial and new trial. We reverse.
*828 Bobbie Wasden, a trainman with Seaboard, suffered serious injuries as a result of an accident that occurred while riding in a caboose owned and operated by Seaboard. As the train crossed a trestle over the Alafia River, the bridge collapsed and spilled the caboose and Wasden into the riverbed. Because Seaboard admitted liability for the accident prior to Wasden's trial, the single issue for the jury's consideration was the amount of Wasden's damages. One of the contested factual considerations relative to damages was whether Wasden was able to return to work at a comparable level of employment as when he was injured. The jury returned a verdict in the amount of $925,000.
At issue in this case on appeal is the propriety of certain comments Wasden's counsel made during his closing arguments, which formed the foundation for the trial judge's grant of a new trial. The following colloquy represents the only objection Seaboard's counsel made during the course of Wasden's attorney's closing argument:
[Mr. McAliley]: You know, it's only in the courtroom that you're going to hear that Bobby Wasden can go back out there. When this railroad makes a business decision not to spend the money to keep their bridges from collapsing, they also make the business decision 
MR. DELL: If the Court, please, that was not involved in this case, and this is improper.
THE COURT: Sustained. The Jury is instructed to disregard it.
MR. McALILEY: I'll rephrase it. When this railroad hires an employee, they hire that employee knowing that he has rights under this Federal Employer's Liability Act. They hire him knowing that if they get this man hurt through their fault, that they have to respond under the act.
After Seaboard's counsel delivered his closing argument during which he acknowledged Seaboard's responsibility for Wasden's injury and conceded that Wasden had suffered pain, lost some capacity for the enjoyment of life and lost past income of $50,000 to $60,000, Wasden's attorney gave his rebuttal, during which no objections were made. After the judge had charged the jury and the jury had retired to deliberate, Seaboard's counsel moved for a mistrial on the basis that the objected-to comment about the railroad's business decision not to repair the trestle, in effect, sought punitive damages and thereby prejudiced the jury. The judge took the motion under advisement.
After the court rendered a final judgment in accordance with the jury's verdict, Seaboard filed a motion for new trial and a renewed motion for mistrial. Seaboard argued that the "business decision" comment to which it had objected, and six other unobjected-to statements made during closing argument, were unsupported by the evidence. The court requested legal memoranda, and in its subsequent memorandum, Seaboard identified twelve additional statements that it considered objectionable, but also to which no objection had been made at trial. After a hearing on the motions, the court entered a written order granting Seaboard's motions for new trial and for mistrial.
After considerable struggle with the propriety of the order for a mistrial and a new trial, we conclude that the trial judge erred. Our struggle with this issue is primarily concerned with the proper scope of our appellate review and is due largely to the fact that this field has been plowed so many times and in so many directions that it is difficult, if not impossible, to find a clear path to a correct result. In arriving at our conclusions, we are first met with the problem that there was only the one objection to any of the matters relied on to support the trial judge's order. The one objection was sustained and a curative instruction given.
Turning first to the order granting a mistrial, while Seaboard's counsel did, after the jury retired, move for a mistrial based on the alleged prejudicial effect of Wasden's attorney's business decision comment, that motion was untimely. In State *829 v. Cumbie, 380 So.2d 1031 (Fla. 1980), the supreme court held that a motion for mistrial based on remarks made during the prosecutor's closing argument was untimely because it was not made until after the jury had been instructed and had retired to deliberate. The court held that the motion should have been made by the end of the prosecutor's closing argument so that the judge would have the opportunity to give additional instructions to cure any damage caused by the remark. Although Cumbie was a criminal case and involved the denial rather than the granting of a motion for mistrial, the same considerations apply to this case. The same conclusion, that a motion for mistrial raised only after the jury has been instructed and has begun deliberations is too late to preserve the issue for appeal, was reached in the civil case of Murray-Ohio Manufacturing Co. v. Patterson, 385 So.2d 1035 (Fla. 5th DCA 1980).
While the supreme court in Ed Ricke and Sons, Inc. v. Green, 468 So.2d 908 (Fla. 1985) has approved a trial judge withholding ruling on a motion for mistrial until after the jury has returned a verdict, the court refused to remove the requirement that the objection and motion for mistrial must be made at the time the improper conduct occurs unless fundamental error is involved.
In his order granting a mistrial, the trial judge below found that the comment "business decision" was highly prejudicial and that, in spite of his instructions, the effect of the comment could not have been erased from the minds of the jurors and that, therefore, a mistrial was in order under the authority of Walton v. Robert E. Haas Construction Corp., 259 So.2d 731 (Fla. 3d DCA 1972), cert. denied, 265 So.2d 48 (Fla. 1972). The distinguishing feature of the Haas case, however, is that the prejudiced party moved immediately for a mistrial. Absent such a timely motion, the grant of a mistrial was error in the absence of fundamental error. We find no fundamental error in regard to the "business decision" comment.
Turning next to the granting of a new trial, the trial judge recognized in his order that a timely objection is normally a necessary predicate to the grant of a new trial. Tyus v. Apalachicola Northern R.R. Co., 130 So.2d 580 (Fla. 1961). Two exceptions to this rule have been carved out, however, both of which the trial court invoked. First, a new trial can be ordered, absent timely objection, if the error is "fundamental," Sears, Roebuck & Co. v. Jackson, 433 So.2d 1319 (Fla. 3d DCA 1983); and, second, a new trial can be properly granted "if the prejudicial conduct and its collective import is so extensive that its influence pervades the trial, gravely impairing a calm and dispassionate consideration of the evidence and the merits by the jury." Tyus, 130 So.2d at 587 (emphasis in original) (citing Seaboard Air Line Railroad Co. v. Strickland, 88 So.2d 519, 523 (Fla. 1956)).
It is in regard to the order for new trial that we must face the difficult issue of the scope or standard of review which we should apply. We conclude that whichever standard we apply our result is the same, yet we are again concerned that there is no clear path through the plowed field. While the trial judge invokes both "fundamental error" and "pervasive influence" standards, it appears to us, on close reflection, that he ultimately equates the "pervasive influence" he perceives in this case to "fundamental error." Fundamental error is reviewable on appeal as a matter of law. United States Life Insurance Co. v. Town & Country Hospital, 390 So.2d 71, 73 (Fla. 2d DCA 1980), review denied, 399 So.2d 1147 (Fla. 1981); LeRetilley v. Harris, 354 So.2d 1213 (Fla. 4th DCA 1978). Where a trial judge grants a new trial on the basis of unpreserved error, it is not a matter of discretion and the ruling will be upheld only if the error is, as a matter of law, fundamental. Sears, Roebuck & Co. v. Jackson. Still, a trial judge may, within his broad discretion, grant a new trial where he finds conduct which is so pervasive as to make it appear the jury *830 has acted on matters outside the record or from sympathy, prejudice or passion.
In such an event, however, we feel the trial judge should identify the actions of the jury he feels results from the pervasive influence. The identifying of those jury actions is more and different from the acts of the party that he concludes constituted the prejudice. In other words, he should not only clearly set forth the error he feels occurred, but also the result of that error. Baptist Memorial Hospital, Inc. v. Bell, 384 So.2d 145 (Fla. 1980); Wackenhut Corp. v. Canty, 359 So.2d 430 (Fla. 1978); Bennett v. Jacksonville Expressway Authority, 131 So.2d 740 (Fla. 1961). Otherwise, the trial judge sits as the seventh juror with veto power, a situation recognized as improper in Laskey v. Smith, 239 So.2d 13, 14 (Fla. 1970).
In this case, no one argues that the evidence will not support the verdict of the jury, remembering that this was a trial in which liability was admitted and the only issue for the jury was the amount of the damages suffered by appellant. It is significant to us that the trial judge did not find that the verdict was against the manifest weight of the evidence. He did not attempt to order a remittitur, probably because he could not illustrate from the record how the verdict was excessive and, if it was, what would be a proper amount of remittitur. He did not find that his judicial conscience was "shocked" by the verdict. Therefore, though he has identified the acts of appellant that he feels were erroneous, he has not attempted to identify the resulting prejudice suffered by appellee as a result of those alleged errors.
While we recognize appellant's showing for reversal of the granting of a new trial must be stronger than that required to reverse the denial of a new trial, McDonald Construction Co. v. Seaboard Coast Line R.R. Co., 375 So.2d 856, 857 (Fla. 2d DCA 1979) (citing Cloud v. Fallis, 110 So.2d 669, 673 (Fla. 1959)), nevertheless, we conclude that the trial judge did abuse his discretion in ordering a new trial in this case. We do so fully cognizant of the rule that the granting of a new trial based upon the discretionary power of the trial judge is so firm that we should not disturb it except upon a clear showing of abuse. Castlewood International Corp. v. La Fleur, 322 So.2d 520 (Fla. 1976).
We do not find, from an examination of the record in this case, that the trial judge's finding has reasonable support in the record. Webster v. Harmon, 240 So.2d 69 (Fla. 4th DCA 1970). In reviewing this case, we have about come full circle in regard to our scope of review. In doing so, the rules become intertwined and entangled. (We have probably plowed the field again ourselves.) First, if the error is complained of as fundamental error, that is a question of law and an appellate court is equally as capable as the trial court of reviewing those errors. Therefore, the weight given the trial court's ruling is not the same as when the ruling is within the broad discretionary power of the trial court. United States Life Insurance Co. v. Town & Country Hospital. The trial court has broad discretion to grant a new trial on matters involving the manifest weight of the evidence. Cloud v. Fallis. However, in other areas, the discretion of the trial court is not so clear. As we have observed, the same rule does not apply in regard to fundamental error. Neither does it apply in the absence of fundamental error, when the ground upon which the error is based has not been preserved by timely objection. Sears, Roebuck & Co. v. Jackson, 433 So.2d at 1322, 1323. In this case, the record does not support fundamental error, A.H. Robins Co., Inc. v. Ford, 468 So.2d 318 (Fla. 3d DCA 1985), and there was but the one objection below.
Even where there exists the fundamental impropriety of a lawyer's assertion of his own personal knowledge of facts in issue, conduct which is proscribed by DR7-106(C)(3) of the Code of Professional Responsibility, that fundamental impropriety does not equate to fundamental error. It is true that comments violative of the Code of Professional Responsibility should not be condoned by the court; however, *831 the admission of such comments in itself is not tantamount to fundamental error. Rather, "`[f]undamental error,' which can be considered on appeal without objection in the lower court, is error which goes to the foundation of the case or goes to the merits of the cause of action." Clark v. State, 363 So.2d 331, 333 (Fla. 1978).
Neither can we find in this case that other error complained of by appellee, post-trial, rise to the level of fundamental error absent a preserving contemporaneous objection. A trial judge can and should intervene to prohibit improper comments even when opposing counsel does not object. See Schreier v. Parker, 415 So.2d 794 (Fla. 3d DCA 1982); Hillson v. Deeson, 383 So.2d 732 (Fla. 3d DCA 1980). This is not to say, however, that the duty of counsel to object is in any way alleviated. Honda Motor Co., Ltd. v. Marcus, 440 So.2d 373, 376 n. 1 (Fla. 3d DCA 1983).
As suggested in Florida Motor Co. v. Marcus and in Nelson v. Reliance Insurance Co., 368 So.2d 361 (Fla. 4th DCA 1978), after-the-fact cries of outrage at the conduct of opposing counsel can be greeted with some skepticism, especially in a case such as this, where only one remark of an alleged total of eighteen comments prompted a contemporaneous objection. We think it significant also that the defendant's motion for new trial identified only six improper comments; after time for additional reflection, defendant identified a total of eighteen in its memorandum. This is important to us because the standard for granting a new trial based on such remarks unobjected to, is that the influence of prejudicial remarks must have been so pervasive as to prevent the jury from a dispassionate consideration of the merits of the case and rise to the level of fundamental error. White Construction Co., Inc; and Limerock Industries, Inc. v. Nathaniel Dupont and Janey B. Dupont, 455 So.2d 1026 (Fla. 1984). Where the great majority of improprieties have been identified by opposing counsel or the judge only after close scrutiny of the written transcript of the proceedings, it is less likely that there was in fact such a pervasive prejudicial effect.
Of the eighteen statements defendant considered improper, the judge referred specifically to only two of them in his order. One was the "business decision" statement about the collapse of the bridge to which an objection had been interposed. The defense counsel and the judge were troubled by the fact that after the judge had given a curative instruction that the jury disregard the statement, plaintiff's counsel continued by stating, "I'll rephrase it." But the fact is that counsel did not say the same thing again in other words, and the court can only assume that the jury did in fact follow the instruction to disregard it. National Car Rental System, Inc. v. Holland, 269 So.2d 407, 412 (Fla. 4th DCA 1972), cert. denied, 273 So.2d 768 (Fla. 1973). Furthermore, the judge had instructed the jury on at least one other occasion that the arguments of counsel were not evidence. "Thus, if the remarks be deemed improper, the error of them is hardly fundamental." Honda Motor Co. v. Marcus 440 So.2d at 377. See also Decks, Inc. v. Nunez, 299 So.2d 165 (Fla. 2d DCA 1974), cert. denied, 308 So.2d 112 (Fla. 1975).
The judge also referred specifically to plaintiff's attorney's comment on the amount of the jury verdict: "I can't tell you and I won't tell you what others have done, but I will tell you that this verdict should be in the range of $1,750,000." Nothing in the Code of Professional Responsibility or the case law prohibits an attorney from suggesting to the jury the size of a damage award, and counsel's prefacing comment that he could not tell the jury about awards in similar cases must be taken at face value and not as an underhanded attempt to prejudice the jury.
We have closely scrutinized the closing arguments of Wasden's counsel, as well as the record as a whole. Perhaps one comment constitutes a reference to matters outside the record, that the railroad runs in *832 ten states. This can hardly be deemed an undue influence on the jury's decision. It is also a statement that has been admitted as true, yet unsupported by direct evidence. Although Wasden's counsel did use the words, "I'm telling you," "I say baloney," "I would suggest to you," "we knew," and other such phrases, he used them in the context of commenting upon matters which were in evidence. Although such phrases might have been better avoided, they do not render the closing argument inflammatory.
In the heat of litigation, attorneys occasionally skirt the boundaries established by the Code of Professional Responsibility. This is unfortunate, but unless the conduct is of the requisite inflammatory and prejudicial character, it must be tolerated absent contemporaneous objection. Decks, Inc. v. Nunez; Metropolitan Dade County v. Dillon, 305 So.2d 36, 40 (Fla. 3d DCA 1974), cert. denied, 317 So.2d 442 (1975).
Wasden's counsel's comments, taken either singly or collectively, simply cannot be said to have had such a pervasive prejudicial effect that they precluded the jury's rational consideration of the proper amount of Wasden's damages. The statements were not, as characterized by the trial judge, inflammatory or sinister or the result of Wasden's counsel's misconduct. Not being objected to and the trial court having taken no contemporaneous voluntary action with reference to the remarks, the question of their propriety raised first in a motion for new trial comes too late. Bishop v. Watson, 367 So.2d 1073 (Fla. 3d DCA 1979). Both parties in the trial of this cause and on appeal have been represented by outstanding and capable counsel, all of whom enjoy substantial reputations in the bar, among the public and with the judiciary. With that in mind, we quote from Judge Letts' concluding remarks in Nelson v. Reliance Insurance Co., 368 So.2d at 362:
We view, with some skepticism, appellant's agonized cries that comment by opposing counsel below deprived him of a fair and impartial trial, when not so much as an objection was deemed necessary upon the occasion of the supposedly fatal utterances. We must assume that silence from experienced counsel is a judgment play predicated on his or her concept of how the trial is going. As such the failure to object constitutes intentional trial tactics, mistakes of which are not to be corrected on appeal simply because they backfire, save in the most rare of circumstances, Haist v. Scarp, 351 So.2d 1120 (Fla. 4th DCA 1977). But see Akin v. State, 86 Fla. 564, 98 So. 609, 612 (1923).
Finding the grant of a mistrial and a new trial was error, we reverse and remand this case to the trial court for reinstatement of the final judgment upon the jury verdict with interest from the date of the verdict.
RYDER, C.J., and DANAHY, J., concur.